IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


CINCINNATI INSURANCE COMPANY                        PLAINTIFF


VS.                        CIVIL ACTION NO.3:07-cv-168-WHB-LRA


MARKEL AMERICAN INSURANCE COMPANY                    DEFENDANT



## OPINION AND ORDER

This cause is before the Court on the parties' competing Motions for Summary Judgment.  The Court has considered the Motions, Responses, Rebuttals, attachments to the pleadings, as well as supporting and opposing authorities and finds:

The Motion of Plaintiff for Summary Judgment should be granted in part, and denied in part.

The Motion of Defendant for Summary Judgment should be granted in part, and denied in part.


## I.  Factual Background and Procedural History

The above referenced declaratory judgment action arises from two incidents that occurred at the Pebble Creek Apartment Homes ("Pebble Creek") in Jackson, Mississippi, which are owned by Southwood Realty Company ("Southwood").  At the time of each incident, Southwood was insured under a Commercial General Liability Policy that had been issued by Defendant, Markel American

Insurance Company ("Markel").  Relevant to this dispute, the Markel

Policies contains the following provisions:

**COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....

     ....

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

For the purposes of the Markel Policies, the term "bodily injury"

"means bodily injury, sickness or disease sustained by a person,

including death resulting from any of these at any time."  The term

"occurrence" "means an accident, including continuous or repeated

exposure to substantially the same general harmful conditions."

The Markel Policies also provide:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

2

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply....

....

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period

For the purposes of the Markel Policies, the phrase "personal and advertising injury" "means injury, including consequential 'bodily injury,' arising out of one or more of the following offenses: (a) false arrest, detention or imprisonment."

The Markel Policies also contain the following exclusions:

## ASSAULT AND/OR BATTERY EXCLUSION

The coverage under this policy does not apply to any claim, suit or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person.  Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision.

## ABUSE OR MOLESTATION EXCLUSION

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2. The negligent:

a. Employment;

b. Investigation;

c. Supervision;

d. Reporting to the proper authorities, or failure to so
   report; or

e. Retention;

of a person for whom any insured is or ever was legally
responsible and whose conduct would be excluded by
Paragraph 1. above.

### PUNITIVE DAMAGES EXCLUSION

It is understood and agreed that coverage under this
policy does not apply to punitive or exemplary damages,
nor to fines, penalties or sanctions imposed by law, nor
to defense costs related to any of the above.

At the time of the incidents, Southwood was also insured under a

Commercial Umbrella Policy that had been issued by Plaintiff,

Cincinnati Insurance Company ("Cincinnati").


McGowan Lawsuit

On July 20, 2006, Jade McGowan ("McGowan") amended her lawsuit

styled Jade McGowan vs. Pebble Creek Partners, Ltd., L.P., d/b/a

Pebble Creek Apartments, Southwood Realty Company, Dan W.

Ratchford, Herman E. Ratchford, James H. Ratchford, Cheronda Minor,

Amanda Gallaway, and John Does 1 through 5, Civil Action No. 251-

05-641, which had been filed in the Circuit Court for the First

Judicial District of Hinds County, Mississippi.  In her first

amended complaint, McGowan alleges:

4

she entered a lease with Pebble Creek on December 20, 2004;

the defendants had a duty to maintain Pebble Creek in such a manner as to comply with all applicable building codes, and to train/supervise their employees to comply with such codes;

the defendants had a duty to ensure that Pebble Creek was habitable, safe, and secure for its tenants;

the defendants had a duty to provide reasonable security measures to prevent criminal activity from occurring at Pebble Creek;

the defendants knew or should have known that the apartment rented to McGowan was in need of maintenance and repairs, particularly to the locking mechanism on the living room window, and that the common areas of Pebble Creek were unsafe because of inadequate lighting and security, improperly maintained landscaping, and because strangers and loiters frequented the apartment complex;

the defendants did not remedy or repair the above referenced defects, inadequacies, or unsafe conditions;

the defendants knew that other criminal acts had occurred on the premises of Pebble Creek;

at the time she entered her lease, the defendants negligently misrepresented that security was provided at Pebble Creek, and that the apartment she leased was safe, secure, in good repair, and otherwise habitable;

the defendants failed to properly inspect, and failed to repair the window locking mechanism in the apartment she rented;

the defendants failed to notify or warn her that the window locking mechanism in the apartment she rented did not comply with applicable building codes;

on or about January 5, 2005, she was confronted, threatened, physically assaulted, and forcibly raped by an unknown assailant who had gained entry to her apartment through a window that had a defective locking mechanism;

the defendants were contractually obligated, and had
warranted, to provide her quiet enjoyment of her
apartment, to provide adequate and reasonable security,
to remedy unsafe conditions in a timely manner, and to
make the premises of Pebble Creek reasonably safe;

"Contributing and/or proximate factors or causes of the
assault, robbery and rape of Jade McGowan, were the lack
of maintenance, repair and upkeep of the windows in the
apartment unit [she] leased", "the presence of strangers
in and around the apartment complex", "the unsafe
conditions of the apartment complex", "the lack of
adequate security and or the lack of criminal background
checks on tenants at the complex."

Through her complaint, McGowan seeks an unspecified amount of
actual and punitive damages through the following claim for relief:

Jade McGowan's physical attack, robbery, sexual assault
and rape occurred as a result and proximate consequence
of defendants' aforesaid negligence, breach of their duty
of due care, breaches of contract, and/or breaches of
warranty and/or covenants, and failure to warn of past
and foreseeable criminal conduct.  Plaintiff seeks
damages for mental pain and suffering, mental and
emotional distress, conscious pain and suffering, past
and future medical expenses, los[t] wages and any other
special damages which [she] may incur in the future.

Upon receiving the McGowan complaint, Southwood purportedly
submitted it to Markel with a request for defense and
indemnification. After Markel denied coverage, Southwood submitted
the McGowan complaint to Cincinnati, which assumed the defense of
that action.


Woodard Lawsuit

On August 4, 2006, Dominisha Woodard ("Woodard") filed a
lawsuit styled Dominisha Woodard, By and Through her Next Friend

6

and Natural Mother, Leona Woodard vs. Pebble Creek Apartments, Southwood Realty Company, Pamela Taylor, Dan W. Ratchford, Herman E. Ratchford, James H. Ratchford, and John Does 1 through 5, Civil Action No. 251-06-777, in the Circuit Court for the First Judicial District of Hinds County, Mississippi.  In her complaint, Woodard alleges:

> she and her mother were tenants of Pebble Creek;
>
> the defendants had a duty to ensure that Pebble Creek was habitable, safe for its tenants, and free of intruders and loiters;
>
> the defendants had a duty to provide reasonable security measures to protect tenants from foreseeable criminal attacks;
>
> the defendants breached their duties by failing to employ adequate security personnel;
>
> the defendants knew that other criminal acts had occurred on the premises of Pebble Creek;
>
> at the time their lease was entered, the defendants intentionally and/or negligently misrepresented that security was provided at Pebble Creek, and that the apartment she leased was safe and secure;
>
> on or about August 5, 2003, Woodward was assaulted and raped by an unknown assailant posing as a pest control technician who gained entry to Pebble Creek and her apartment because of a lack of adequate security;
>
> the defendants were contractually obligated, and had warranted, to provide her quiet enjoyment of her apartment, to provide adequate and reasonable security, to remedy unsafe conditions in a timely manner, and to make the premises of Pebble Creek reasonably safe;
>
> "Contributing and/or proximate factors or causes of the assault and rape ... were the lack of adequate security", and the "the presence of strangers and loiters in and around the apartment complex..."

7

Through her complaint, Woodard seeks an unspecified amount of
actual and punitive damages through the following claim for relief:

> Dominisha Woodard's physical attack, and rape occurred as
> a result and proximate consequence of defendants'
> aforesaid negligence, breach of their duty of due care,
> breaches of contract, and/or breaches of warranty and/or
> covenants, and failure to warn of past and foreseeable
> criminal conduct.  Plaintiff seeks damages for mental
> pain and suffering, mental and emotional distress,
> conscious pain and suffering, past and future medical
> expenses, los[t] wages and any other special damages
> which [she] may incur in the future.

The <u>Woodard</u> complaint was removed to this Court on November
27, 2006, and now bears Civil Action No. 3:06-cv-661-DPJ-JCS.  On
June 13, 2007, Woodard amended her complaint to include a claim of
wrongful detention.  Specifically, the amended complaint alleges:

> On or about August 5, 2003, the minor Plaintiff Dominisha
> Woodard was unlawfully detained and raped in her
> apartment at the Pebble Creek Apartment Complex by an
> assailant posing as or pretending to be the pest control
> man.  The assailant was able to gain entry to the
> apartment complex and the apartment unit due to lack of
> adequate security at the apartment complex. Prior to and
> during the rape, Plaintiff was unlawfully detained in the
> apartment unit by the rapist.  Said unlawful detention
> was proximately caused by the lack of adequate security
> at the apartment complex.

Woodard further alleges that the "unlawful detention and rape
occurred as a result and proximate consequence of defendants' ...
negligence, breach of their duty of due care, breaches of contract,
and/or breaches of warranty and/or covenants, and failure to warn
of past and foreseeable criminal conduct."  Upon receiving the
<u>Woodard</u> complaint, Southwood purportedly submitted it to Markel
with a request for defense and indemnification.  After Markel

denied coverage, Southwood submitted the <u>Woodard</u> complaint to Cincinnati, which assumed the defense of that action.[1]

On March 26, 2007, Cincinnati filed the subject lawsuit against Markel seeking a declaratory judgement that the latter is contractually obligated to defend and provide coverage for the underlying <u>McGowan</u> and <u>Woodard</u> complaints.  Federal subject matter jurisdiction in this case is predicated on diversity of citizenship.  For the purposes of diversity analysis, Cincinnati is a corporate citizen of, and has its principal place of business in the State of Ohio.  Markel is a corporate citizen of, and has its principal place of business in the State of Virginia.  As the parties are diverse, and as Cincinnati seeks damages in an amount greater than $75,000, the Court finds it may properly exercise subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.  The parties agree that the North Carolina law governs this dispute.[2]

---

[1]  On December 14, 2007, United States District Judge Daniel P. Jordan, III, granted the <u>Woodard</u> defendants' motion to compel arbitration.  A motion for reconsideration of that decision is currently pending.

[2]  As the parties agree that North Carolina law governs this dispute, a choice of law analysis is not required.  <u>See</u> <u>e.g.</u> <u>Mayo v. Hartford Life Ins. Co.</u>, 354 F.3d 400, 403 (5th Cir. 2004) (finding that a choice of law analysis was required in a case in which the parties did not agree on which state's law applied to the controversy).

## II.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The movant need not, however, support the motion with materials that negate the op-ponent's claim.  Id.  As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point

10

to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

### III.  Legal Analysis

Under North Carolina law:

> 'An insurer's duty to defend suits against its insured is determined by the language in the insurance contract....' Brown v. Lumbermens Mut. Cas. Co., 326 N.C. 387, 392 (1990). The terms of an insurance policy govern the scope of its coverage, and 'the intention of the parties controls any interpretation or construction of the contract....' Fidelity Bankers Life Ins. Co. v. Dortch, 318 N.C. 378, 380 (1986). The court must use the definitions given in the policy to determine the meaning of words contained in the policy. Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354 (1970). 'In the absence of such definition[s],

11

nontechnical words are to be given a meaning consistent
with the sense in which they are used in ordinary
speech...." Id.

Any ambiguity in an insurance contract must be
resolved in favor of the insured. Maddox v. Colonial
Life and Accident Ins. Co., 303 N.C. 648, 650 (1981). In
addition, in North Carolina, '[e]xclusions from and
exceptions to undertakings by the company are not
favored, and are to be strictly construed to provide the
coverage which would otherwise be afforded by the
policy.' Id.

When considering whether terms in an insurance
policy create the duty to defend, the court may compare
the pleadings to the terms of the policy. 'When the
pleadings state facts demonstrating that the alleged
injury is covered by the policy, then the insurer has a
duty to defend, whether or not the insured is ultimately
liable.' Waste Mgmt. of Carolinas, Inc. v. Peerless Ins.
Co., 315 N.C. 688, 691 (1986). After analyzing the terms
of the policy, 'the pleadings are read side-by-side with
the policy to determine whether the events as alleged are
covered or excluded.' Id. at 693. '[T]he insurer's duty
to defend the insured is broader than its obligation to
pay damages incurred by events covered by a particular
policy.' Id. at 691.

Durham City Bd. of Educ. v. National Union Fire Ins. Co. of
Pittsburgh, PA, 426 S.E. 2d, 451, 453-54 (N.C. Ct. App. 1993)
(alterations in original).


A.  **McGowan Compliant**

As regards the McGowan complaint, the parties do not dispute
that the physical assault/rape alleged therein constitutes a
"bodily injury" caused by an "occurrence" thereby implicating
coverage under the Markel Policies.  Markel, however, argues that
it is not obligate to defend or provide coverage for the McGowan

12

complaint based on the assault and/or battery exclusion contained
in its policies.  Again, this exclusion provides:

### ASSAULT AND/OR BATTERY EXCLUSION

> The coverage under this policy does not apply to any
> claim, suit or expense arising out of assault and/or
> battery, or out of any act or omission in connection with
> the prevention or suppression of such acts, whether
> caused by or at the instigation or direction of any
> Insured, Insured's employees, patrons or any other
> person.  Nor does this insurance apply with respect to
> any charges or allegations of negligent hiring, training,
> placement or supervision.

In response, Cincinnati argues that the assault and/or battery
exclusion does not relieve Markel of its duty to defend or provide
coverage for the McGowan complaint because McGowan alleges a claim
for negligent misrepresentation that arose before the alleged rape
occurred.  Specifically, Cincinnati argues:

> [T]he exclusion would apply to exclude coverage for
> McGowan's "negligent misrepresentation" claim if it was
> proximately caused by the assault and/or battery.  The
> alleged "negligent misrepresentation" claim, however, was
> not proximately caused by the alleged rape.  First, the
> misrepresentation occurred several months prior to the
> rape, and thus logically could not have "arose out of"
> the rape.  Second the misrepresentation and the rape were
> two separate, isolated events, neither one of which were
> dependent on the other.  Given the timing of these
> events, there is little support of the argument that the
> underlying defendants' alleged misrepresentation arose
> out of the alleged rape.

Pl.'s Mem. Brief [Docket No. 18] at 11.

The Court finds the issue presented in this case with regard
to the McGowan complaint is analogous to that addressed in Allstate
Insurance Co. v. Bates, 185 F. Supp. 2d 607 (E.D.N.C. 2000).  In

13

Bates, the plaintiff insurer sought a declaratory judgment that it was not obligated to defend or provide coverage for a lawsuit filed against the Bates, its insureds, which arose from the sexual molestation of a minor child on their premises.  In the underlying lawsuit, the child alleged that she was sexually molested, battered, and forcibly restrained by William Bates, and that Patricia Bates had breached her duty to protect her from the acts of William Bates and breached her duty to warn of William Bates's propensity for assaulting minors.  At the time of the alleged incident, the Bates were insured by the plaintiff under a homeowner's insurance policy, which contained the following exclusions:  "Coverage does not apply to bodily injury 'which is expected or intended by the insured'" or to "bodily injury 'arising out of sexual molestation, corporal punishment or physical or mental abuse.'"  Id. at 611.

Like Cincinnati herein, Patricia Bates argued that the negligence claims alleged against her were not excluded from coverage because they did not arise from the underlying sexual molestation.  Disagreeing, the court found:

> [Patricia Bates] misstates the central issue.  With respect to the sexual molestation exclusion, the issue is whether the alleged bodily injury, i.e., the harm to [the minor child], arose from sexual molestation – not whether another individual's alleged negligence arose out of the sexual molestation.  The policy unambiguously bars coverage for injuries arising out of sexual molestation, and there is no question that the bodily injury in this case arose out of sexual molestation.

Id. at 612 (alterations in original).  The court additionally found

that the underlying sexual molestation was not "incidental" to the negligence claims alleged against Patricia Bates but, instead, was "the motivating factor for such a claim.  Without the molestation there would be no injury and thus, no basis for the negligence claim."  Id. at 613.  Based on these findings, the court held that the negligence claims alleged against Patricia Bates were excepted from coverage under the express terms of the exclusions contained in the homeowner's policy, and that the insurer was not obligated to defend or provide coverage for those claims.  Id.

In the case *sub judice*, it is clear that McGowan's bodily injuries arise out of the alleged physical attack that occurred in January of 2005.  It is likewise clear that the physical attack is the motivating factor for her negligence claims, including her claim of negligent misrepresentation, against the defendants named in her complaint.  See Def.'s Mot. for Summ. Jud., Ex. A (McGowan Complaint), ¶ 32 (alleging: "Defendants intentionally and/or negligently misrepresented ... that security was provided ... and that the apartment unit was safe, secure, and in good repair.... McGowan reasonably relied upon these representations....  As a result of the intentional and/or negligent misrepresentations, Jade McGowan was attacked, and raped."); id. at ¶ 46 (alleging: "Jade McGowan's physical attack, robbery, sexual assault and rape occurred as a result and proximate consequence of defendants' aforesaid negligence, breach of their duty of due care ... and

15

failure to warn of past and foreseeable criminal conduct."). Based on the allegations in McGowan's complaint, the Court finds that the negligence claims alleged therein, including her claim of negligent misrepresentation, arise out of the alleged physical attack that occurred in January of 2005 and, therefore, are excluded from coverage under the assault and/or battery exclusion contained in the Markel Policies.[3] See Bates, 185 F. Supp. 2d at 613.  See also St. Paul Surplus Lines Ins. Co. v. 1401 Dixon's, Inc., 582 F. Supp. 864, 867 (E.D. Pa. 1984)[4] (finding, that although the underlying complaint alleged negligence, the insurer was not required to provide a defense or coverage because the injured third party's

---

[3] Cincinnati has not offered any evidence or argument that McGowan's claims of breach of contract, breach of warranty, breach of implied covenants, or robbery are covered under the subject Markel Policies.  Under the same reasoning applicable to the negligence claims, the injuries resulting from the alleged breaches and robbery are damages caused by an assault and battery and are, therefore, likewise excluded under the assault and/or battery exclusion in the subject policies.

[4] The 1401 Dixon's court adopted the following language from an unpublished opinion:

> It is undoubtedly true that for the injured parties to recover in this suit, they must demonstrate that their injuries were caused by allegedly negligent acts.  But, although the injuries must, in this sense, have been caused by the insured's negligent acts, it does not follow that these same injuries did not "aris[e] out of assault and battery."  The injured parties' real contention is that their injuries arose out of an assault and battery which, in its turn, arose out of the insured's negligence.  Thus, the injured parties' injuries are unambiguously excluded from coverage by the assault and battery exclusion.

1401 Dixon's, Inc., 582 F. Supp. at 867-68 (alterations in original).

damages were directly caused by an assault and battery.   "The mere fact that [the insured] may have been negligent in allowing the assault and battery to occur does not avoid the effect of the exclusion.").

In addition, under the express language of the assault and/or battery exclusion in the Markel Policies, coverage "does not apply to any claim, suit or expense arising out of assault and/or battery, <u>or out of any act or omission in connection with the prevention or suppression of such acts</u>."   The phrase "out of any act or omission in connection with the prevention or suppression of such acts" was examined in <u>Stiglich v. Tracks, D.C., Inc.,</u> 721 F. Supp. 1386 (D.C.C. 1989).   In <u>Stiglich</u>, the plaintiff sued the defendant dance club alleging that the latter was negligent in failing to hire sufficient security personnel to prevent or stop an assault against the plaintiff by an unidentified patron of the club.   <u>Id.</u> at 1387.   Thereafter, the defendant filed a third party complaint seeking to compel its insurer to defend and indemnify the plaintiff's claims.   The insurer argued that coverage for plaintiff's claims was excluded under the terms of the assault and/or battery exclusion, which provided:

> It is agreed that the insurance does not apply to bodily injury or property damage arising out of the assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons, or any other person.

<u>Id.</u>

17

Finding the exclusion relieved the insurer of its duty to defend and indemnify, the court reasoned:

> [The insured] contends that the plaintiff's claim is not excluded by the Assault and Battery Exclusion because the claim is in essence one of negligence arising out of its failure to provide adequate supervision and security in the club and not the assault which resulted from its alleged negligence.  However, the terms of the policy clearly provide that the policy does not apply "to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts." [The insured's] alleged failure to hire sufficient security is precisely an "act or omission" which could have prevented or suppressed the assault in this case.  Indeed, the plaintiff's complaint states that his injuries are "a direct and proximate result of the [the insured's] negligence."  If the plaintiff contended otherwise, that [the insured's] failure to hire enough security would not have prevented or suppressed the assault, then the plaintiff obviously would not have a negligence claim because of a failure to demonstrate causation between [the insured's] alleged negligence and his injury resulting therefrom.

Id. at 1388 (alterations in original).

In the case *sub judice*, as in <u>Stiglich</u>, McGowan alleges the physical attack that occurred in January of 2005 was proximately caused by negligence on the part of the defendants named in her lawsuit.  <u>See</u> Def.'s Mot. for Summ. Jud., Ex. A (McGowan Complaint), ¶ 39 (alleging: "Contributing and/or proximate factors or causes of the assault, robbery, and rape" "were the lack of maintenance, repair and upkeep of the windows in the apartment unit", "the presence of strangers in and around the apartment complex", "the unsafe conditions of the apartment complex", and "the lack of adequate security and or the lack of criminal

18

background checks on tenants at the complex."). Based on the
allegations in the McGowan complaint, the court finds the alleged
acts of negligence are "acts or omissions" which could have
prevented the physical attack and, therefore, are excluded from
coverage under the assault and/or battery exclusion contained in
the Markel Policies.

For the foregoing reasons, the Court finds there does not
exist a genuine issue of material fact with regard to whether the
claims alleged by McGowan are excluded from coverage under the
assault and/or battery exclusion contained in the Markel Policies.
Accordingly the Court finds that the Motion of Markel for Summary
Judgment, as it relates to the McGowan complaint should be granted,
and that the Motion of Cincinnati for Summary Judgment as to that
complaint should be denied.


**B.   Woodard Complaint**

In her original complaint, Woodward alleged that she had been
assaulted and raped by an assailant who had gained entry to her
apartment by posing as a pest control technician. See Def.'s Mot.
for Summ. Jud., Ex. B (Woodard Complaint), ¶ 18. For the same
reasons discussed *supra* regarding the McGowan complaint, the Court
finds that coverage for the claims alleged by Woodward in her
original complaint would be excluded under the assault and/or
battery exclusion in the Markel Policies. On June 13, 2007,

19

however, Woodward amended her original complaint to allege a claim of wrongful detention.  <u>See</u> Pl.'s Mot. for Summ. Jud., Ex. B (<u>Woodward</u> First Amended Complaint), ¶¶ 18, 27.

Under North Carolina law, Cincinnati bears the initial burden of showing that Woodard's lawsuit is "within the insuring language" of the Markel Policies.  <u>See</u> <u>Hobson Constr. Co., Inc., v. Great Am.</u> <u>Ins. Co.</u>, 322 S.E.3d 632, 635 (N.C. App. Ct. 1984).  Cincinnati argues that Markel is required to defend and indemnify the <u>Woodward</u> lawsuit because her claim for unlawful detention is a "personal and advertising injury" which is expressly covered under the subject policies.  Again, the Markel Policies provide:  "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury'" that is "caused by an offense arising out of your business."  The policies specifically identify "detention" as one of the offenses from which a "personal or advertising injury" may arise.

In response, Markel argues:

> In her Complaint, Ms. Woodard avers that she suffered bodily injury and unlawful detention by an unknown assailant unaffiliated with Southwood Realty.  As a result, Ms. Woodard's unlawful detention clams do not obligate Markel to defend and indemnify Southwood in the underlying suit because Southwood's business was not implicated by the assailant's detention of Ms. Woodard.

<u>See</u> Def.'s Mem. Brief [Docket No. 22], 4.  The Court disagrees. Under North Carolina law, because the Markel Policies do not define the term "arising out of," the Court must apply the ordinary

20

meaning of that phrase.  See City of Greenville v. Haywood, 502
S.E.2d 430, 433-34 (N.C. Ct. App. 1998) (citations omitted).
Additionally, under North Carolina law, the phase must be liberally
construed.  Id. at 434.

> The words "arising out of" are not words of narrow and
> specific limitation but are broad, general, and
> comprehensive terms affecting broad coverage.  They are
> intended to, and do, afford protection to the insured
> against liability imposed upon him for all damages caused
> by acts done in connection with or arising out of such
> use.  They are words of much broader significance than
> "caused by."  They are ordinarily understood to mean ...
> "incident to," or "having connection with" ... use ....

Id. (quoting State Capital Ins. Co. v. Nationwide Mut. Ins. Co.,
350 S.E.2d 66, 69 (N.C. 1986)).

In Woodard, the plaintiff alleges that she was unlawfully
detained by an assailant who "was able to gain entry to the
apartment complex and the apartment unit due to lack of adequate
security at the apartment complex."  See Pl.'s Mot. for Summ. Jud.,
Ex. B (Woodard First Amended Complaint), ¶ 18.  The Court finds
that the act of providing security, or the failure to so do, would
be an act arising from, i.e. "having connection with", the business
activities of Southwood, the apartment complex owner.  Based on the
record before it, the Court additionally finds that a reasonable
juror would reach the same conclusion.  Accordingly, the Court
finds that there does not exist a genuine issue of material fact
with regard to whether the detention complained of by Woodard arose
out of a business activity of Southwood, or whether it constitutes

a "personal or advertising injury", which implicates coverage under the terms of the Markel Policies.

As Cincinnati has carried its burden of showing that Woodard's detention claim is covered by the subject Markel Policies, the burden now shifts to Markel to "prove that a policy exclusion excepts the particular injury from coverage." Haywood, 322 S.E.2d at 635.  In this regard, Markel argues that Woodard's detention claim is excluded from coverage under both the assault and/or battery exclusion, and the abuse or molestation exclusion.  Again, the Court disagrees.

In the case sub judice, while it is clear that the rape and unlawful detention about which Woodward complains occurred during the same period of time, it is equally clear that she seeks damages as a result of both alleged actions.  See Pl.'s Mot. for Summ. Jud., Ex. B (Woodard First Amended Complaint), ¶ 27.  Markel has not presented any evidence or case law to support a finding that the alleged claim of unlawful detention should be treated as an assault or battery, or as an act of abuse or molestation. Additionally, the Court finds that an individual could be unlawfully detained in the absence of such conduct.  Because Woodward alleges a claim of unlawful detention, which may not constitute assault, battery, abuse, or molestation, and which may not have arisen because of the alleged rape, the Court finds that the exclusions in the Markel Policies excepting such actions from

22

coverage are not applicable.  See e.g. Durham City Bd. of Educ. v. National Union Fire Ins. Co. of Pittsburgh, PA, 426 S.E.2d 451, 453 (N.C. Ct. App. 1993) (explaining that ambiguities in an insurance policy must be resolved in favor of the insured, and that exclusions in an insurance policy "are not favored" and must be "strictly construed to provide the coverage which would otherwise be afforded by the policy.") (citations omitted).  Accordingly the Court finds, as a matter of law, that Markel was obligated to provide its insured a defense and indemnity in the Woodward lawsuit from the date on which her First Amended Complaint alleging a claim of unlawful detention was filed.

Markel has also moved for summary judgment arguing that under the Punitive Damages Exclusion it is not is obligated to provide indemnity for any punitive or exemplary damages that may be awarded to Woodward.  Cincinnati does not dispute the terms of this exclusion.  See Pl.'s Rebuttal [Docket No. 28], 13.  Accordingly, the Court finds that Markel is entitled to summary judgment on the issue of punitive damages.

### IV.  Conclusion

In sum, the Court finds that Markel is not obligated to provide a defense or indemnification in the underlying lawsuit filed by Jade McGowan, but is obligated to provide a defense and indemnification in the underlying lawsuit filed Dominisha Woodward,

from the date on which her complaint was amended to include a claim of unlawful detention.   Markel, however, is not obligated to indemnify its insured for any punitive or exemplary damages that may be awarded to Dominisha Woodward.

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Plaintiff for Summary Judgment [Docket No. 17], and the Motion of Defendant for Summary Judgment [Docket No. 15], are hereby granted in part and denied in part.

IT IS FURTHER ORDERED that Markel American Insurance Company is granted a declaratory judgment that it is not obligated to provide a defense or indemnification in the case styled Jade McGowan vs. Pebble Creek Partners, Ltd., L.P., d/b/a Pebble Creek Apartments, Southwood Realty Company, Dan W. Ratchford, Herman E. Ratchford, James H. Ratchford, Cheronda Minor, Amanda Gallaway, and John Does 1 through 5, Civil Action No. 251-05-641, which is pending in the Circuit Court for the First Judicial District of Hinds County, Mississippi.

IT IS FURTHER ORDERED that Cincinnati Insurance Company is granted a declaratory judgment that Markel American Insurance Company is obligated to provide a defense and indemnification in the case styled Dominisha Woodard, By and Through her Next Friend and Natural Mother, Leona Woodard vs. Pebble Creek Apartments,

Southwood Realty Company, Pamela Taylor, Dan W. Ratchford, Herman E. Ratchford, James H. Ratchford, and John Does 1 through 5, Civil Action No. 3:06-cv-661, which is currently pending in the United States District Court for the Southern District of Mississippi, Jackson Division.

IT IS FURTHER ORDERED that the obligation of Markel American Insurance Company to provide a defense and indemnification in the case styled Dominisha Woodard, By and Through her Next Friend and Natural Mother, Leona Woodard vs. Pebble Creek Apartments, Southwood Realty Company, Pamela Taylor, Dan W. Ratchford, Herman E. Ratchford, James H. Ratchford, and John Does 1 through 5, Civil Action No. 3:06-cv-661, arose on June 13, 2007, the date on which the First Amended Complaint was filed in that case.

IT IS FURTHER ORDERED that Markel American Insurance Company is granted a declaratory judgment that it is not obligated to provide indemnity for any punitive or exemplary damages awarded in the case styled Dominisha Woodard, By and Through her Next Friend and Natural Mother, Leona Woodard vs. Pebble Creek Apartments, Southwood Realty Company, Pamela Taylor, Dan W. Ratchford, Herman E. Ratchford, James H. Ratchford, and John Does 1 through 5, Civil Action No. 3:06-cv-611.

IT IS FURTHER ORDERED that each party is to bears it own fees and costs incurred as a result of this litigation.

A Final Judgment will be entered this day dismissing this case with prejudice.

SO ORDERED this the 11th day of June, 2008.


                                s/ William H. Barbour, Jr.
                                UNITED STATES DISTRICT JUDGE